Okay, the next case is number 2012-1038, Atelier de la Hoscarone against Brugge Automation USA. Mr. Lindvall, when you're ready. First, I'd like to apologize. I wasn't here this morning. I had an unexpected emergency. Your Honor, the District Court, Your Honors, the District Court erred in this case, and it was in a summary judgment context. The burden was clear and convincing evidence. The District Court construed Mr. Aureo's deposition testimony as requiring or stating that Mr. Aureo had formed a subjective belief that an odd number of grooves was the best mode at the time of filing the patent application. And your view is, no, that's wrong, because at most, that testimony deals with just the three grooves versus the two grooves? Is that your position? Exactly, Your Honor. If you look at the testimony in context. No, but my concern and question goes to whether or not you made that argument before the District Court. Yes, Your Honor, and I can address that. Okay. If you'd like to. Yes, Your Honor. This with respect to the waiver. The waiver argument is interesting, because if you look at the briefing. Well, it's not really a waiver argument, is it? I mean, it's that you kind of conceded that by not responding to it. That you kind of conceded it, right? No, Your Honor, and I'll tell you why we did concede. If you look at the briefings by the parties, the broach were the movements in that case. They brought it up in their brief, a three-quarters of page in their brief. They brought up the argument about the odd-numbered groups. How we responded to that, if you look at our brief carefully, we responded by saying the inventors had not come up with a best mode at the time of the filing of the patent application. And we made it very clear. If I look at our brief on, if you look at the record. I don't understand what that means. The inventors hadn't come up with what best mode? Well, the idea was that they, what broach had come up with, they said there were two potential best modes here. First, they said it was a five-groove best mode. And that was one of them they said that we had come up with before the patent application. Right, and then just before us. Yes, and the second one was, well, maybe if it wasn't a five-groove, it was an odd-numbered group. Right. So, it was two best modes that they had alleged that we had come up with. Right. By the time of the patent filing application. The district court found the five-groove mode, there was a question of fact about the timing on it, on when we actually came up with that. And they decided it was an issue of fact that could have been after the filing of the patent application. So, therefore, that was a question of fact that the jury has to decide. With respect to the odd-numbered grooves, they alleged that our inventor, Mr. Orio, had come up with, had a subjective belief that the best mode of practicing the invention before the patent application was an odd-number of grooves. We responded in our brief by saying, no, they were still in development. They had not come up yet with a best mode. They had not decided what their best mode is. In fact, what the facts show is the actual best mode to practice the invention was the five-groove mode that came after the patent application. They had come up with a three-groove mode, and they actually built it and developed it and actually gave it to some customers, the three-groove mode. And the record shows that before the patent application. And that's exactly the three-groove mode is the exact embodiment that we describe in detail in the patent itself. What I say where I say the district court went wrong is the district court automatically assumed we didn't address the odd argument. Well, he looked at the deposition, and he said it's clear from the deposition that you thought the best mode at the time was the odd number and that you didn't disclose that. You didn't adequately disclose that. Well, no. Read in context. If you look at Mr. Oriel's testimony, Mr. Oriel did not say that the best mode was an odd number of grooves in general. Yeah, and that's my question. Did you ever tell that to the district? Did you take that position before the district court? Yes. At the district court level, in our response brief, we said that Mr. Oriel had not formed in his mind, what the best mode of practicing this invention was. They were experimenting with the three-groove, and they actually used it and actually developed it and gave it to some customers. But the facts show that they didn't ultimately go with that three-groove mode. They went with the five-groove mode that came later on. But, I mean, I guess just looking at the testimony, the district court read it and dealt with it in some detail. And he construed this as being that clearly it showed a preference that the best mode was odd numbers over and above even numbers and that you failed to disclose that simply by having one of several embodiments be the odd number three-groove embodiment, right? Well, there's two ways to answer that question, Your Honor. First answer is that we believe that the district court misread Mr. Oriel's testimony in context. If you read all the testimony, I'd be happy to walk through with you. It wouldn't take very long. The second thing that I would like to bring out to you, Your Honor, is that let's assume for purposes of argument that Mr. Oriel did form in his mind there's this odd number was preferred method. There's nothing in the record to show he preferred any other odd number other than three. He didn't talk about five, seven, nine, eleven. Out of all these different odd numbers, we could go to 119. Yeah, but the problem is, and the district court dealt with this in some detail, you haven't shown enough. I mean, you disclosed there's nothing whatsoever in the spec to demonstrate a preference between odd numbers and even numbers. The two of the three embodiments disclosed dealt with even numbers. That's precisely the district court's problem. Obviously, he conceded that one of the embodiments is three. We all know that. But he thought in the circumstance of this case, if it's a given that evens are bad, don't work, odds are good, you should have disclosed more than one out of the three embodiments. And why is that wrong as a matter of law? Why that's wrong is that the premise, the whole premise by saying that even is bad is wrong. If you look at, again, this goes back to the context of Mr. Oriel's testimony. Mr. Oriel said that only with respect to short stem rivets could you potentially have a problem when you have a two-groove tube. And that's what he always referred to as the two-groove tube. Because you can imagine a rivet where you have two grooves crossing each other. It could go in between both grooves and then rotate in a two-groove situation. But with a three-groove tube, with a short-term rivet, you don't have it. Now, he specifically says, Mr. Oriel specifically says that, and this is in JA 103, he says, we realize that from the very beginning, because it kept, if you have a groove here, he's referring to Figure 3 through his whole testimony, and you have a chance a rivet might flip this way, if the rivet is very long, it will never rotate on itself. There won't be an issue. So he's distinguishing that a two-groove embodiment will work in a long groove. With long rivets, right? With long rivets, but not with short rivets. Yes, it may not work with short rivets. And a three-groove tube will work with both. Yes, with a long-stem rivet, it will work. So even back when they were looking at the invention, they were aware of this, apparently, that the best mode was the three-groove tube or an odd-numbered groove tube. Well, at that point in time, that's what they thought, and that's exactly what they disclosed in the patent application. In fact, they disclosed it in the patent of the three-groove. By just having one of several embodiments, what if they had had 50 embodiments, and 49 of them were all with the even number of embodiments, and they disclosed the one-three? Is that sufficient to satisfy the best mode requirement? There's no explanation in the specification about the preference, even with the short rivets as opposed to the long rivets, that even numbers don't work. Even numbers don't work. Well, even numbers will work with certain types of rivets. No, I said with the short rivets. Yes, with the short rivets, they still may work. In fact, if you look at Mr. O'Reilly's… Well, the deposition 103 says that the problem, after he said the long won't be an issue, but the problem is that you need to manage that relatively short rivets will not rotate. And to that end, of course, you don't want them, blah, blah, blah. With an odd number of grooves, you're going to have the head rivet going to the rest on two grooves. And therefore, I mean, he does say it's a problem, right? Yes, Your Honor. He does say with short-term rivets that with a two-groove tube, that could create a problem. Right. But what the record shows is they were still experimenting. In fact, if you look at Mr. O'Reilly's declaration, he said that at that period of time, they were looking at four-groove tubes. So this generalization, the problem that we have is the generalization he makes to the context of this deposition testimony. In the complete instance, and throughout this testimony, Mr. O'Reilly was pointing to the patent. One of the reasons we submitted to the court the video was so you could see Mr. O'Reilly was looking down, describing the patent, where he was looking at the three-groove tube. He was constantly in the context of three-groove versus two-groove tube. And you're right, Your Honor. With the two-groove tube, he did say that you may have an issue with short-term, with short-stem rivets. But there's nothing in the law that requires a person to say, well, here's our three modes of operation. This one is absolutely the best. This one is not as good because it won't work under the following circumstances. And this one, this third one, really doesn't work very well at all. I think in the Ramonex case— There is a requirement that the best mode be established or set forth. Yes, Your Honor, without a doubt. And in this case, the three-groove tube, at that point in time, that's what they thought. That was their embodiment. When I look at the pen and I see different diagrams, I see even numbers, I see the three-groove tube. There's one with 52 or 53 grooves. But there's no discussion as to—especially that a two-groove is not going to work. Yes, Your Honor, but— The two-groove did not resolve the problem that the invention claims to have settled. Well, yes, Your Honor, it would solve the problem if the rivets are long-stem. And may or may not solve it if it was short-term. We don't know what's necessarily going to rotate with the two-groove tube. The industry at the time was using both long rivets and short rivets. Yes, Your Honor. So, for all practical purposes, a two-groove tube would not solve the problem. It wouldn't solve it as well. Because the rivets could still go through that. But you're correct, Your Honor, that Mr. Orio did testify, the two-groove tube, that there was an issue with short-stem rivets. There's no doubt about that, and that's the context he brought this up in. And how to solve that issue was they went with the three-groove tube. And what your— And so is your view that just by disclosing that one embodiment, that was sufficient to disclose what we've been talking about here with respect to the problem with the short rivets? Yes, Your Honor, I think we're— The court disagreed. So he cites spectrophysics, and he says that even though there might be a general reference to the best mode, the quality of disclosure may be so poor as to effectively result in concealment. And he cites some cases, and here he says that the identification of the lone embodiment that happens to share a trait in common with the Avengers' best mode is insufficient, without more, to avoid summary judgment. Why is that wrong? Well, it's interesting that there— To answer your direct question, you were talking about the second prong of the test, not the subjective belief, which we tend to conflate in this case because the real issue is about the subjective belief here. But if we go to the second prong where it talks about an objective prong, it talks about whether the disclosure was sufficient or not, you have to look it through one eye as one of skills in the art. would be the best against short-term—short-stem rivets. In fact, one skill in the art may very well understand it that way. No evidence— I'm sorry. It seems to me you're cutting against your own case. You're conceding that nobody would have understood by—that was the district court's problem, that nobody reading the specification would have understood that there's a preference for the odd number. No, Your Honor. What I meant to say, and I probably misspoke— I'm in. Okay, is that under the second prong of the best mode, it requires that the—this has to do with the disclosure, whether the disclosure was sufficient or not. You have to look through the eyes of one skill in the art. So the patent disclosure has to be sufficient so one skill in the art can determine what the best mode is. Yeah, and the district court—about that point, the district court said that you made—that's the argument you made. That's the only argument you made, and that you've offered no evidence that one skill in the art would read the specification, patents, and divine from them that an odd number of rivets is best. Yes, Your Honor. The district court said that, but the district court was wrong in saying that. The reason was it wasn't our burden of proof to come forward with that evidence. It was Broach's burden of proof to come forward with evidence to show that one skill in the art would have read our patent disclosure as being insufficient. So you had to rebut that evidence. They did not provide any evidence. If you look at their opening brief, their moving brief, it was three-quarters of a page long. There was no expert declaration. But if you read the spec, there's nothing there. I mean, there's no dispute. The spec says nothing about any kind of preference between odd and even. So they didn't have to prove that up. I mean, that's a given, right? I assume you weren't disputing, look at this in the spec. This doesn't. So if there's no dispute, then you've got to show that someone skilled in the art would have seen that in the spec, even though there's nothing in the spec about it, right? No, but I would submit that's an improper shifting of the burden because they have to come forward with evidence to show that one skill in the art would not have been determined by just looking at the spec. Because there may be someone skilled in the art or a person skilled in the art could look at figure two with a three groove and then the other figure with two grooves and say, wait, the two grooves, I can see a short rib is going to go between those two grooves. So I'm going to use the three groove. And I see that that's the best way of practicing it from someone skilled in the art could look at it that way. Isn't the burden summary judgment just simply to allege that there's no material issue in dispute? Then it's up to you to come forward and to show that there is a genuine issue in dispute. Yes, Your Honor. And what we've done, we're looking at the first prong, the subjective prong. Had the inventor formed in his mind a best mode? And if he had, what was it? And what the district court did, they focused on… Judge Pearl's question is you didn't offer any evidence that the specification would disclose to somebody who's skilled in the art that a odd number of grooves or a two groove tube is not good and odd is the best mode. No, Your Honor. We did not do that because there was no evidence from the other side to even rebut on that because they never came forward with evidence. They're saying based on the record before the court, there's no issue in dispute. So part of the record is the patent. Yes, Your Honor. But what the court focused on was the subjective belief. It doesn't matter about what one's skilled in the art. The subjective belief of Mr. Oriel and what his testimony actually means. Drawing all inferences in our favor. So if you read his testimony… But that's another question. But that's the first one we have to answer. Yeah, but we were talking about one's skilled in the art. So we're talking about – that's a different question. Well, let me say what I see the question as. Because my understanding of the statute is that in order to invalidate on a best mode theory, it has to be shown that there was concealment of a mode that the inventor knew was better than that which was disclosed. And my perception was that this was how the case was presented. The trial judge had a different view of what the law was and should be. Perhaps my view of the law is incorrect. And I'm about to ask your opponent to perhaps elaborate on that point. But from that viewpoint, the objective and the subjective criteria and the requirement for deliberate concealment and the record for the current – you just mentioned that the statute has been changed was because there were so many opportunities for distraction in terms of what does and doesn't go into a patent application. Particularly – I didn't mean to make a speech, but here we have evolving technology where the best mode of all was not discovered specifically until after the patent application was filed. And whether to require refiling and all the rest of it have been things that have been discussed and rejected. So let's hear from the other side. We're into your rebuttal time, but we'll save it and see if we can resolve at least the premise of law that we're operating from. Yes. You say what's troubling me. That was my understanding of what the law was. You have a different view? May it please the court, yes. Or let's wait for the district court to have a different view. Yes, Your Honor. This is the issue of whether or not intent to conceal is an element of a best mode violation. Yes, indeed. And without intentional concealment, my understanding was that invalidation on this ground was not available. There might be other grounds. Right. But not this ground. And my response to that, Your Honor, will be that the best mode requirement comes out of Section 112, Paragraph 1, just like the enablement requirement and the written description requirement. And we do not have an intent to conceal or intent to not enable or an intent not to give a written description. So the statute doesn't establish an intent element of this violation. Additionally, numerous decisions of this court, including obviously U.S. Gypsum, but as well as In Re Cyclo Benzedrine, decided just a couple of months ago by this court, and I believe you were on the panel. Well, we look at the older cases rather than the new ones. Exactly. And the older cases were quite explicit that one needed to show that the inventor knew of a better mode than was included in the patent. Yes, Your Honor. So In Re Sherwood, of course, is the oldest case that goes back, and it says you can either have intentional or accidental nondisclosure, and that would be a violation of the best mode requirement. The reason, Your Honor, that accidental nondisclosure should also count as a violation is this. The standard is, are you going to give enough information in the patent that will permit a person having ordinary skill to practice the best mode? So imagine in this circumstance, we have a person having ordinary skill in the art, and she sits down in her workshop for the very first time saying, I'm going to practice the best mode of this invention. And she reads this patent. Does she know that in her choice of the number of grooves, if she wants the best results, she cannot pick an even number? She certainly can't pick two, because Mr. Ariel definitely testified that two will not work, and he testified that three is the minimum. And yet, in two of the examples, we are told that two worked just fine as far as reading the text of the specification would tell us. So whether or not it was accidental or intentional to not disclose that information to the world, our hypothetical person having ordinary skill in the art sitting in her workshop would not know that her choice of the number of grooves is not wide open. It's constrained to only even numbers. I'm sorry, only odd numbers. Let me ask you, if they had disclosed one embodiment, and the embodiment was the three, and not the even number of embodiments, would that be sufficient in the absence of describing that even numbers could be problematic? I would say that no is the answer to that, because the best mode isn't just three. The best mode is the choice of the number of grooves must be odd. It can't be even. That information has to be found somewhere in the text of the specification. The problem I have with that is that that would include five, right? And the district court already found that there was a problem. I mean, he couldn't grant summary judgment on five, so he was willing to say, at least for summary judgment purposes, that there wasn't enough to establish that five would have been the best mode. The commercial embodiment that was eventually sold by the plaintiffs had five grooves. And as I gleaned the testimony of the co-inventor, Mr. Bourne, I think he always felt that five was the best. But they put in a declaration, which, by the way, we did object to its admissibility, contrary to the footnote. That's all water under the bridge, because the district court denied summary judgment on that. I found there was evidence on both sides as to whether or not five should have been disclosed. So you just told me, I thought, that the failure here was to disclose every ad number, which would include five. Isn't there tension between that and what the district court found? I don't think so, Your Honor. The specific dispute that he found for trial was the date on which they decided five was the best embodiment. Not that three, five, and seven should all have been disclosed, rather than what was disclosed in just the three. The dispute there was the date as to which they decided five was best. There doesn't appear to be ever a time when they necessarily thought three was best. But Mr. Areol always thought that odd numbers were better than even numbers. You're saying they had to disclose their concept even though they hadn't tested it. He said that was known based upon the testing they were doing, and that was from the very beginning. Wasn't it referring to the short rivets at that point with respect to three grooves? We don't have some claims directed at short rivets in the tube and other claims directed at long rivets in the tube. But the deposition itself, we're talking about short rivets at the time. Right, and he said the problem is when we make tubes, we have to be sure they can handle short rivets. In other words, they have to be able to handle both short and long. And he discovered there was a definite problem with at least short rivets if he only used an even number of grooves. Your citation to the deposition where there's a discussion about the three grooves, when I read that, it seemed to me that the context of that discussion dealt with the problem dealing with short rivets. And he said that with a three-groove tube, there's no problem with the short rivets. He says on JA-103, but the problem is that you need to manage that relatively short rivets will not rotate. So what he's saying is that every single tube we make, we have to be able to be sure it can handle short rivets. That's a problem, as well as long rivets, which he finds to be not as much of a problem. But you need to be able to handle those short rivets for every single tube. And he says he knows that he can't use two, for example. I mean, he specifically says we need odd in the same sentence as he says three. So he can't mean that those words mean the exact same thing. I don't understand. It seems to me that the answers, at least in the deposition, what the inventor said, seems to be at least more geared towards three than to the generic odd number, and more geared towards two than generically any even number. Is that not a fair assessment? And if that's the case, don't you lose on summary judgment? I don't think I lose on summary judgment for one specific reason, that this argument was never raised below. This court reviews the record de novo. And the record as it sits below is they were absolutely silent on making that kind of argument as to how the facts ought to be interpreted. Yeah, but the problem is the district court, in an abundance of caution, went on to read this affidavit on his own and draw a substantive conclusion based on the affidavit. So I think we're still looking at the affidavit. That's what he looked at. And isn't it a fair assessment of the affidavit, at least for summary judgment purposes, to glean they were really talking about three and two and not odd and even numbers generically? I don't, Your Honor, merely because he specifically testified under oath it has to be odd. He didn't merely say it has to be three, for example. Where does he say it has to be odd? Where does he say that? It says you need an odd number, which is at JA 101, line 18. Okay. Well, he says three, you need an odd number. Exactly. He could have just stopped and said three, you need three. Is that the deposition where he's referring to the problem with short rivets? That's a couple of pages before that, Your Honor. Let me ask you a question. Let's say that I build airplanes and I've been building Piper clubs all my life and I use short rivets. Then I want to build a larger jumbo jet. Then I don't see how I would get a tube that takes both short rivets and long rivets when all I need is short rivets for the Piper club and long rivets for the jumbo jet. So if all I'm going to use is long rivets, then isn't a two-groove tube also a best mode? I don't know that there would be a best mode in that situation, Your Honor, as opposed to this inventor's thinking. But this inventor is thinking that whatever tubes he's putting together will work for both short and long. He says that when you're making this tube, the short rivet is a problem that you must deal with. Do the tubes take two long rivets and two short ones? Because all the diagrams seem to show either a long one or a short rivet. The tubes that are shown in the specification, Your Honor, I think could accommodate either long or short. I thought the problem at the time was that in delivering either short or long rivets without jamming, and that the solution was grooves. Two grooves takes care of long rivets. Three grooves takes care of both. The assertion in the patent is that the problem is they needed to get the air around the rivet heads in some way or another so that the air was all over the tube instead of just in the back pushing. Because in a grooveless tube, you couldn't do that. That would be the argument that they made, yes. So their solution was to come up with a groove tube, and it turns out that a two-groove tube will deliver long rivets but not short ones. A three-groove tube or a five-groove will deliver both. Aren't they both best modes of the invention? Then one of them is not disclosed in the patent, which is that for the short tubes, you need at least three. That information is never disclosed. I'm not sure in looking at the rivets that are drawn in the specification whether they are short or long. And I think a person of ordinary skill looking at it would think that she could select two. The coiled embodiment that is shown there that only has two grooves, I would tend to call those short rivets. And she is being told as she sits in the workshop looking at the specification, her choice includes the number two. I think the information is missing, what the SpectraVision case would call critical parameters, your choice of the number of grooves. But the invention is to solve the problem of non-jamming, and both a two-groove tube and a three-groove solves that problem. A two-groove tube does not solve that for short stem rivets. That's correct, but it solves the problem about non-jamming. And the claims do not say, but don't use this invention with short rivets, only use it with long rivets. So we have to disclose the best mode for practicing it with short rivets to disclose the best mode of the claimed invention. Your Honors, if I may turn to my cross-appeal? Pardon me? If I may turn to my cross-appeal? Yes, please. Yes. So, Your Honors, we have appealed Judge Stark's denial of our 12B1 motion for dismissal for lack of subject matter jurisdiction of their first claim for relief, which is the so-called 339 patent. And the reason is that the documentary evidence does not offer any proof whatsoever that the issue fee was paid with regard to that patent. We have no problem with the other patent, the 216, that the issue fee was paid. And we understand there would be an impulse toward judicial mercy in a case like this, but the problem is we have the text of a statute from Congress, Section 151, saying that if the issue fee is not paid, you must regard this as an abandoned application. I thought that the record shows that the issue, though we may not know how, but that the issue had been resolved. I don't see where the record does show that, Your Honor. There's nothing in the Patent Office file history saying the issue has been resolved. It just stops saying we need to see a petition to revive. Well, we're going to withdraw the patent. Well, Your Honor, the… And that's what the letter says, right? The letter from the Patent Office, I believe, does say that. And they never did withdraw it. The statute from Congress says it's not a patent. It says it's an abandoned application. And even if that section of 151 doesn't apply, you have the other section of 151 saying, if you still don't pay in another three months, it lapses. Now, that old language from, as an example, the DH Technology case says the reason we have that, the lapse language… But it appears that everything was cleaned up. They've been paying their maintenance fees, and the Patent Office issued the patent and never withdrew it. I mean, all of the evidence points to the fact that this problem was cleared up at some point. We have to assume that the, you know, Patent Office acts, you know, with regularity and good faith. So we assume it's cleared up. I know we usually assume such things, but, of course, they misspelled the first-name inventor's name on the cover of the statute. Yeah, but they were the ones that called to their attention the fact that the check had bounced. Yes. So, obviously, we can assume that that matter was cleared up because they proceeded to issue the patent. I think there would be further documentation in the file history, at the very least, a granted petition to revive, which the statute requires that there be a showing that the nonpayment on time was unavoidable. And there's nothing in the written record that shows that that showing was ever made to satisfy the statute. Did you inquire of the office? Did you provide any evidence of nonpayment? We inquired of the office, Your Honor, and we were told that because we were not attorneys of record, they would not provide us any information. Because it was a nonissue. Well, Your Honor, there is someone who could see if the information like that does exist within the Patent Office, but for whatever reason, they've been unprepared to seek whether or not that information exists within the Patent Office. Yeah, but the question, you've got the burden in the first instance, and you've got to come up with enough in order to shift it, and the question is whether you have. Well, I would think, Your Honor, actually, we have filed a 12B1 motion making a factual challenge to the jurisdictional bases in the complaint. I believe that the plaintiff has the burden to make a persuasive case that jurisdiction is satisfied, that they are a patentee with regard to the 339. There was a letter from the PAM attorney to the client that says, okay, I took care of it. We no longer have a problem. So there is a document that they submitted in their opposition to our 12B1 motion, which they say is a letter from the attorney from a very long time ago, but it's only attached to an unsworn declaration of one of their litigation counsel, and there's no explanation as to where it came from and why it was never produced or logged before. And the rules for authentication require that you can't establish something as an ancient document, and therefore get over the hearsay rule as well without explaining the circumstances in which this apparent ancient document is found. So I'd say the letter is unauthenticated hearsay. Let me take you – I have one lingering question on the best mode issue. Yes. Would you not agree that our case law requires that you disclose best mode, that you don't have to call it out? You do not have to say the magic words, this is the best mode. But here's a situation where they have said, we had not settled on a number of groups that would be the best embodiment. I can agree with that. But what they did have, at least Mr. Ariel, one of the inventors, had in his mind was he knew some information that was critical to the selection of the number of groups, and that kind of information has to be disclosed under this court's precedent. So wouldn't the disclosure with three group two satisfy that? No, because three is not the best mode. The best mode is, in making your selection, you must avoid the odd numbers. Three itself doesn't – Avoid the even numbers. I'm sorry, avoid the even numbers. Avoid the even. So wouldn't three satisfy that? No, because three doesn't teach that odd numbers are bad. Three just teaches I am three. But they did disclose three. They disclosed three, and that would be something that has a general characteristic in common with the best mode, which is all even numbers. And my opponents even agree on page 11 of their yellow brief that AHG does not contend that a three-grouped embodiment  Okay, is that an answer? Yep. All right. Thank you very much. Thank you. Thank you, Mr. Carroll. Mr. Lindvall? First, I'd like to address the one question that Yara has raised about the best mode and the disclosure in the specification, the concept that you'd have to say that one mode is a little better than the other mode. And what I'd like to submit is that in the case of Random X versus Scopius, this court said that – it was quoting from the Board of Patent Appeals and Interference – it said, There is no requirement in 35 U.S.C. 112 that an applicant point out which of his embodiments he considers his best mode. That the disclosure includes the best mode codified by the applicant is enough to satisfy the statute. And in this particular case, what happened was there were two modes. One of the modes was actually – could have caused an explosion. It was a dangerous mode. It was a mode that you probably would never want to use. And the other one was really the preferred mode. But they didn't discriminate between the two. They didn't warn you and say, Don't use that mode because it won't work or could be dangerous. And they said that that was not a best mode violation from a concealment standpoint. With respect to the testimony from Mr. Ariel, with respect to the two grooves versus three grooves, in his testimony at JA 103, he says in response to a question, he says, The tube that you machined to put grooves into back in 1988 – that's before the patent application – can you remember what configuration or shape? What shape are you reading? JA 103. And it starts out as JA 102 at the bottom and then goes on to 103. The question was, The tube that you machined to put grooves into back in 1988, can you remember what configuration or shape the inside of the tube had? And he answers in JA 103, We had three grooves, just like this. And the video shows he's pointing to the patent again. Because for machining purposes, it was easier to have just three. If we only had two grooves, there was a chance that the rivet would rotate on itself. Now, there's a chance it would happen. It doesn't mean it's always not going to work. A short-stem rivet may rotate, but it may not. And again, the context of this is only a three-groove versus two-groove. All this back-and-forth questioning was three-groove versus two-groove. There was never – In fact, if you look in here, in his testimony, the word even is never used. There's never a generalization made by Mr. Oriel that you need an odd number versus an even number in a generalized sense. He's always talking about a three versus a two situation. And considering that any inferences must be drawn in our favor because it's a summary judgment, we would respectfully submit that a reasonable reading of this could go our way, and that it was a three versus two, and Mr. Oriel, they disclosed three-groove tube in the patent itself. Now, one last interesting aspect was in JA-104 of the testimony, where Mr. Oriel was asked the question, did you find there was any particular number of grooves that worked best? The answer is no. And the proof of that is in that the patent we have put that you need three grooves minimum, but you can see also there's another drawing in which we have many grooves. So this was the question right after the series of questions when he asked, was there a particular number of grooves that you need? And the answer is no. He didn't say, well, no, it has to be the odd. So, again, this is a bit confusing, but the whole idea about this, this is a summary judgment situation. This is a situation where factual issues like this should not be decided in summary judgment motion. Any reasonable inference should go our way. Now, let me briefly talk about the jurisdictional issue. First of all, the court's standard is a clear error that the judge, district court, was clear error in his fact-finding. And I believe, as your honors have recognized, the Patent Office has always treated this as an issue patent. We've been paying maintenance fees all along. There's no dispute about that. Deciding this on subject matter jurisdiction was not the way to go, right? Yes. In fact, the aristocrat case is really the way this is doing it. It's actually fairly clever by saying this is really an invalidity defense. That's how aristocrat came out. So what the district court judge did here was somewhat off, right? Yes. In fact, if it was invalidity, the burden of proof would have been clearing convincing evidence on their part. And I would submit that it clearly is not clearing convincing evidence that this patent is invalid because we failed to pay the issue fee. So I don't think I need to harp on that. Notwithstanding that the district court made clear factual findings, which could go maybe one way or another, but since there's preponderance of evidence in the jurisdictional issue, and under the clear evidence, clear error standard, it would go our way in that situation or support the district court's decision. Unless your honors have any further questions of myself, please. I think we're all right. I think I'm the prosecutor. You can stand on your brief if you'd like. Yes, yes. All right. In that case, there's nothing to rebut in that case. And so we have the cases taken under submission. The remaining issues we'll consider on the brief. If there are no more questions, that concludes the arguments for this morning.